JOHN GAUCHE *v.* C. A. STORER, Captain of Ship Martha J. Ward, and
J. P. WHITNEY.

The clause, "The freight payable after receipt of the whole in good order," contained in a bill of lading, has reference to the levee as the place of delivery and receipt, while the words "in good order" relate to the external appearance of the things received.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J.
*G. & C. E. Schmidt,* for plaintiff and appellant. *Benjamin, Bradford & Finney,* and *T. J. Durant,* for defendants.

COLE, J. The petitioner represents, that he is a merchant, and *J. P. Whitney & Co.* are ship brokers and commission merchants, to whom a large number of domestic and foreign vessels are consigned, of which they take charge for the purpose of delivering the cargo, collecting the freight due thereon, &c.

That about October, 1855, the ship *Martha J. Ward* arrived at the port of New Orleans, from Liverpool, in England, laden with merchandise and having on board thirty-eight casks and seven crates of earthenware belonging to petitioner, shipped in good order at the port of Liverpool, and to be delivered in like good order, at the port of New Orleans, to petitioner; the freight payable after receipt of the whole in good order.

That *Storer,* the captain of the ship, and *Whitney & Co.,* the agents thereof, combining for the purpose of injuring petitioner, refused to deliver the goods unless the freight for their transportation was previously paid to them on the levee.

That the said refusal, by impeding him in obtaining his merchandise, loss of sales resulting from the non-delivery, &c., have caused him damage to the amount of five hundred dollars.

Further, that the illegal and malicious conduct of defendants, in thus refusing to deliver the merchandise without payment of the freight thereof, has, by injuring his credit at home and abroad, &c., caused him damage to the amount of $4,500.

This cause was tried before a jury, who rendered a verdict in favor of the defendant, and from the judgment of the court thereupon plaintiff has appealed.

GAUCHE
*v.*
STORER

Our opinion of this case renders it unnecessary to express any opinion upon the bills of exception. A careful perusal of the record satisfies us that plaintiff is not entitled to any damages.

The conduct of the defendants does not appear to have been actuated by any malice, but merely with a natural desire to be paid the reward of their labor upon the delivery of the merchandise, fearing that plaintiff might make objections to the payment of the freight, if he received the goods before settling therefor.

It is established that it is unusual to put in a bill of lading the clause " The freight payable after receipt of the whole in good order." In fact, none of the witnesses ever saw such a clause inserted in a bill of lading.

The whole case of plaintiff rests upon this clause. He contends that he was not bound to pay the freight until he should have received the goods at his store, and there to be satisfied that they were in good order, whilst the defendants insist that it was the duty of plaintiff to have opened the casks and crates upon the levee, and there to have examined them, in the event he was not satisfied with their external appearance as to their being in good order.

It is shown that it is not usual to deliver merchandise arriving from domestic or foreign ports, without the previous payment of freight, when it is consigned to those with whom the owners or agents of the ship have had antecedent difficulties in collecting their freight, or with whom they anticipate such impediments.

It is also established, that the agent of several ships had experienced difficulties with plaintiff in collecting his freight, and had been obliged to make several deductions, which he preferred losing rather than to institute legal proceedings for the same.

That the place of delivery of merchandise is the levee, and that in most cases the freight is exacted in from one to five days after the hauling away of the goods, according to the volition of the collector of the freight.

That in some cases, consignees examine crockery ware on the levee, when it is thought to be injured, unpacking the crates at the levee. This is insisted upon by the agents of ships, because the crockery ware is often more injured by being hauled through the streets of New Orleans than by the voyage; that the crates can be judged by their external appearance, whether they have received injury upon the voyage, for if sea water has entered, it discolors the straw ; that the judgment of their arriving in good order is based upon their external appearance.

We are of opinion that the clause " The freight payable after receipt of the whole in good order " does not signify that the consignee is entitled to take the freight from the levee, the place of delivery, without the payment of the freight. It is shown that crockery ware, of which species of goods the merchandise of plaintiff consisted, is often injured by hauling from the levee to the store of the consignee, and also that it is very often broken in unpacking at the store. It would, therefore, be unjust to construe this clause to mean that the " good order " therein mentioned referred to the condition of the goods at the store and not at the levee.

The universal way of judging whether goods are in " good order " when they are received by steamboats, vessels, or other modes of carriage, is by their external appearance. If that appears to be good, the bill of lading is given, that they are received in " good order."

All the casks and crates of plaintiff are shown to have been in good order, so far as to external appearance.

The condition of the clause was, therefore, satisfied, and the defendants had the

right to insist upon the payment of the freight before the goods were taken away.

If, upon unpacking them at the store, plaintiff had found them to have been injured upon the voyage, he would have had his action against the defendants, notwithstanding he had given his receipt for them as being in "good order," inasmuch as this related merely to their external appearance.

It is established, that plaintiff could have taken the whole of his casks and crates after they were put upon the levee, if he had wished, by paying the freight; that they were taken from the vessel in a reasonable time after her arrival, and were placed together, and separately from others, for the convenience of plaintiff; that plaintiff received and took away, paying the freight therefor, all his casks and crates except one, which he refused to haul away. He does not complain that any of the merchandise received was broken or injured, and the crate that remained appeared to be in as good order as those that he took away.

Upon the refusal of plaintiff to take the one crate that remained, it was sent by the defendants to a warehouse, to be stored.

If plaintiff had wished to examine the internal condition of the crates, he could have done so upon the levee. No reason appears why he declined taking the one crate, except that he did not wish to pay the freight until he had received it at his store.

If plaintiff suffered any damage from not receiving the goods in time to supply his customers, it was his own fault, for he could have taken them sooner, if he had desired to pay the freight. Besides, the damages suffered by plaintiff in being prevented from selling the goods, is not clearly established. One of the witnesses supposes it was a certain sum, but he states no proper data upon which his opinion is based. As to the injury to the reputation of plaintiff, it does not appear that it could be injured, as he alleges, at home and abroad, by making him pay his freight upon the delivery of the goods, as it is customary to make every one almost pay within a few days, or within twenty-four hours, as the collector thinks proper, after the goods are taken away.

Judgment affirmed, with costs.